## Kenmont Coal Co. v. Wells.

Feb. 11, 1944.

Craft & Stanfill for appellant.

Courtney C. Wells for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On October 6, 1941, the parties to this litigation entered into a written contract by which appellant employed appellee to construct "* * * a tram road approximately 4500 feet long from the present opening at head of the Right Fork of Elk Fork of Lotts Creek to the new opening of the party of the first part in Bucks Branch, which will be at least 12 feet wide on solid in cuts and 14 feet wide on fills, including all clearing of right of way and the removal of timber where it will be out of the way, and it can be reached later for disposal, also including excavation and fills for tram and mine openings, necessary ditching, rip-raffing at discharge end of pipe culverts, the delivering of pipe culverts from railroad station to where it will be used, the installation of pipe culverts, channel charges where desired, and all odd and necessary jobs to put grade in readiness for

laying steel, the material for fills to be obtained from most convenient location.''

It was further provided: ''* * * that all of the said work in the construction of said tram road shall be done by the party of the second part in accordance with the specifications to be furnished by the party of the first part to him and subject to the approval by the engineer of the party of the first part.''

The compensation to be paid appellee was $4135.00 plus a bonus if the work was completed within a specific period; but the only question with which we are concerned on this appeal is the right of the appellee to compensation for an extra mine opening, which, according to his petition and testimony ''was not included in his written agreement with the defendant and for which excavation it agreed and promised to pay the plaintiff a reasonable price therefor.'' The Court submitted this issue to the jury by an instruction directing them to find for the plaintiff reasonable compensation not exceeding $1045.20 if they believed from the evidence that the plaintiff ''excavated for extra mine opening not included in his written contract mentioned in the evidence, and that the defendant agreed to pay him a reasonable price therefor.'' Under this instruction the jury awarded appellee $700.00; and this appeal is from the judgment entered on that verdict.

According to the undisputed testimony, an agreement to construct a ''mine opening,'' as that term is employed in construction contracts, is not an undertaking to excavate a passageway leading into the hill or mountain containing the coal, but merely an undertaking to ''face up'' the cliff or portion of the hill from which the entry is subsequently to be made. In fact, that is all that appellee did in constructing the two mine openings involved. According to the testimony of appellant's Vice-president and General Manager, appellee ''simply with his bull-dozer faced this cliff wide enough so we could put in two mine openings. It was simply a facing up job. Those mine openings were to be made 40 feet apart, to make the mine openings 15 feet wide and 40 foot centers that necessitates a minimum of 55 feet. Naturally you got some more, that is where he gets his 58 feet. He is in error on that. We cleared it up more over 58, maybe over 60.'' Asked how many

openings were contemplated at the time of the execution of the contract, the witness answered:

"A. How many openings—two of course—couldn't run a coal mine without two openings. You have to have one for air to go in and one for air to go out as well as the coal.

"Q. At the time of the execution of this contract, was the Kenmont Coal Company developing or going to put in a new mine—entirely new mine? A. Yes, nearly a mile from the old mine.

"Q. Mr. English, is it possible to open up or start the development of a mine with only one opening? A. Possible, but impracticable.

"Q. Why do you say that, tell the jury? A. I expect everybody on the jury have seen coal mines enough to know you have to have one entry for air to go in and let the air come out, lead it around. To your question, is it possible—it is against the State Law—the State Law requires you to have two openings as a minimum."

The appellee, when asked what he understood was meant by the employment of the words "mine openings," stated that one of the openings referred to was the opening at the old mine from which the road led, and the other, a single opening for the new mine. However, he admitted that he, himself, had made the opening at the old mine some ten years previously and had performed no new work on it under the contract; and further, that he knew that all mines have an opening and an air course. Notwithstanding this, he insists that only one opening was to be made at the new mine because of the fact that as originally staked out by the Company, only one opening was indicated. In answer to this, appellant's mining engineer testified that the stakes referred to had been placed in December, 1940, for the purpose of indicating the center of one of the twin openings contemplated, and that when appellee "got ready to clear the timber off prior to coming down there to excavate it, I gave him a distance to the right and left the size of the haul he would have to make, 7 feet to the right of the line of stakes and 47 feet to the left which made an opening at the bottom of 54 feet wide." Appellant's witnesses also denied appellee's testimony that they had told him that he would be paid for the extra work involved in excavating the space required for two openings.

Appellee's counsel argue that the fact that after the contract sued on had been completed, appellant employed and paid appellee to construct a third opening or air course approximately 100 feet distant from the twin openings, nullifies appellant's contention that the contract sued on necessarily contemplated twin openings, one of which was to be used as an airway. It is further argued by appellee's counsel that since appellant, in its answer, admitted that it had employed appellee to construct an extra mine opening, appellee was entitled to a directed verdict on the pleadings. But it is obvious, when the pleadings are analyzed, that the only extra mine opening which appellant admitted having employed appellee to construct, was the air course located approximately 100 feet from the twin openings; and the fact that appellant, when it thought it desirable to construct a third opening, employed and paid appellee for constructing it, strengthens, rather than diminishes our belief that both parties regarded the twin openings, simultaneously constructed, as covered by the original contract.

Other more or less persuasive arguments are advanced by appellee's counsel in support of their theory that only one opening was contemplated by the original contract; but we find nothing in these arguments, or in the proof, to explain the use of the language which we have quoted from the contract. It is not claimed that the plural "mine openings," was used in the contract by mistake, and it is obvious from the testimony that the opening in the old mine constructed some ten years previously could not have been one of the openings to which the contract had reference. Moreover, we regard it as a wholesome principle that the burden of showing that a contract means other than it says must be squarely met by the litigant making the assertion. Here, the proof leaves no doubt that both of the parties well knew that to excavate for a single opening would not be sufficient since at least two would be required; and the suggestion that if appellant was entitled to require two, it was at liberty to require as many more as it thought desirable, is offset by the admitted fact that when it did determine on more than the necessary two, it, voluntarily and without question, employed appellee and paid him for constructing it.

Accordingly, the Court should not have submitted to the jury that branch of the case relating to appellee's

claim for compensation for making an extra mine opening, but should have directed a verdict for appellee.

Judgment reversed.